Morning, Your Honors. May it please the Court, Richard Lucero for the petitioner Kaida Zhang. Your Honor, this matter involves an asylum claim where the petitioner is asserting he was persecuted by the Chinese government for protesting in the open. He asserted that he was persecuted based on his political opinion. The issues in this case, as I see it, Your Honor, are based on the adverse credibility finding made by the immigration judge and also affirmed by the Board of Immigration Appeals. One of the adverse credibility findings made by the immigration judge was that the petitioner was able to freely leave China with a valid passport even though he testified that he was persecuted and arrested for protesting against the government. The judge found that it was implausible that he would be able to do it. However, in his testimony, the petitioner specifically testified that he was able to do this because his family member bribed the local officials. The local officials told his family if he paid a $10,000 bribe, they would look past this act and they would not report it to the higher authorities, which is exactly what the petitioner did. His parents paid the $10,000 bribe, which would follow that the local officials didn't report to the higher level. It would obviously logically follow that the higher level would not know that there were any crimes against him. But then at the same time or shortly thereafter, the police were going to his mother's house to inquire where he was, even though this had all been taken care of by the bribe? That's true, Judge, but I believe that those were the local officials that were doing this. So again, the local officials who arrested him specifically stated that they would not report this to a higher level. What the higher level is a little bit unclear, but again, that would make sense as to why custom officials at the airport were not aware that perhaps he had some kind of charges pitted against him. Also, I think it's important... Moreover, she had, it was she who had paid the bribe, so they had every reason perhaps to go back and say, we want more money in effect. That's correct, Your Honor. So again, I think that given his testimony, it's logical to assume that the higher levels did not know about this because the police told them they would just kind of dismiss it if they paid the bribe, and this is exactly what they did. We can, even if we were to agree with you on this, we could uphold the finding of the IJ and the BIA if we find that some of the basis for finding your client not credible or correct, can't we? That's correct as well, Your Honor, and I will address those issues as well. Another finding that the immigration judge found implausible was the fact that the petitioner took some in June of 2013. This is important because the petitioner was asked at trial whether or not he planned to file for asylum before he went to the United States. The petitioner testified that he did not. He did not determine that he was going to file for asylum until he came to the United States. So the judge then stated, well, then why are you preparing to take all these notarial certificates with you to the United States if you had not planned to file for asylum? So the point that the immigration judge was making was that the petitioner all along had a plan to file for asylum before he left China, which would be contrary to his testimony. However, the petitioner testified that when he went to obtain his passport, the travel agency who prepared the passport for him specifically told him, you need to take these other documents with you or else you might have an issue trying to reenter the country. So that is why he took those documents with him. Can I ask you a question? Reenter which country? I believe the travel agency told him that he might need those to reenter China when he returned. That was my understanding. But he knew that wasn't true because he hadn't had any problems the first time around. That's true, Your Honor. However, in the testimony, the petitioner testified that the travel agent told him that if he were to travel by himself, he would need these documents to reenter China. The first time he testified, he traveled with two people. He did travel by himself. But then didn't, I mean, wasn't there also this timing issue where he had originally testified he didn't begin planning the second trip until April 30th, but then the judge, the immigration judge pointed out that he'd had some of the documents notarized before then, and he changed his answers. I mean, why isn't the, the, the, the, those type of facts including the, the immigration judge's finding that the manner of his testimony suggested that he wasn't credible. Why isn't that enough for us to deny the petition? Yes, Your Honor, because I believe that if I'm correct from the testimony was that when he went to first obtain his passport in March of 2013, that's when he was told by the travel professional that he needed to have these documents prepared. So he was told this well in advance of his first and second trip. So when he was told that at that time, that's why he began to prepare that documentation. Another issue that the, so let me ask a question, which may also be for your adversary. I'm a little unclear about where the law is on. On the one hand, I see cases where findings that by the petitioner's demeanor or otherwise, the administrative law judge found the petitioner to be not worthy of belief. But on the other hand, I see cases where it says that where the petitioner offers an explanation that the IJ has to make a specific determination as to why that explanation was not plausible. So does it follow from that that even if in this case the IJ thought your client was by his demeanor indicating less than total credibility, the IJ still had to address the specific explanations he gave? That's correct, Your Honor. The Ninth Circuit does give a lot of deference to the immigration judge's demeanor findings. However, in this particular case, on two occasions, the judge did notice, did note that there was issues with the petitioner's demeanor. When he was asked to leave China, he said that the petitioner was basically non-responsive. He also stated that when he was asked, another occasion he was asked about the notarial certificates, he said that the petitioner stammered and he noted that in his decision. However, as you stated, the judge has to specifically cite why he does not believe that the petitioner's explanation is plausible. And I don't believe he did that here. He basically just said, well, I don't believe him. And I don't believe, that's why I don't believe that the demeanor finding here should be held. In addition, the immigration judge found it implausible that the government officials would keep going to his mother's house asking for his whereabouts when the petitioner was already in the United States. The petitioner stated at trial that he has no idea why they keep going to his mother's house, that they were trying to convince perhaps his mother to have the petitioner come back to the United States. And the immigration judge basically was just not buying that answer. And again, he didn't specifically state why he wasn't buying that answer. He basically said that it was implausible. But having said that, there's no way that the petitioner would know why the police kept coming to his house. He never testified that he was expert on local police policies. The judge is asking him a question that he cannot possibly explain. So again, the immigration judge basically said, I found this answer implausible. As I stated in my brief, there's a litany of reasons why the police may have kept going over to his mother's house. Perhaps they were trying to intimidate the family members to force the petitioner to come back. I'm not sure. Okay. Yes. Let's hear from the government and you'll have a little bit of time for rebuttal. Good morning. May it please the court, Paul Fiorino for the Attorney General. The task for the court today is to affirm the board's decision if it's supported by substantial evidence and reverse it only if there's compelling evidence, inescapable compelling evidence that he's telling the truth and that his claim is credible. So, you know, while the petitioner spends a lot of time advancing arguments as to why the police may have done this or why they may have done that, it's his burden ultimately to show that every one of the reasons given by the immigration judge and affirmed by the board that his testimony was implausible is wrong. Judge Bennett, you asked a question. As long as one of the bases is supported by substantial evidence, then the court should affirm that's correct. Judge Rakoff, you asked about if the IJ makes a demeanor finding and has to consider the explanations given by the petitioner. Well, I think that the record shows that he did do that. If you look at pages 7 and 8 of the immigration judge's decision, I don't recall offhand what the AR site number is for that. But the IJ did consider what he said and he said it just doesn't make sense. So what you have here is that... Maybe I missed it. The bribe, his testimony that the reason the police acted the way they did was because his mother paid a $10,000 one bribe? As I read the record, I don't read the continued... I don't interpret the continued visits back to get more money. I think that's a question that you might have asked. But it also goes to the first credibility finding he made. And as near as I can tell, it's not addressed at all, correct? That explanation about his mother paying the bribe. I don't know if it was or not. I don't know specifically. Assuming for the sake of argument that it was not addressed and assuming for the sake of argument that it was a plausible explanation, doesn't... reasonable and plausible explanation for the apparent discrepancy, the IJ must provide a specific and cogent reason for rejecting it. So that's what's troubling me here. It may be that it wasn't a plausible explanation, but assuming it was and it wasn't addressed, don't we have to send it back? No. Why not? Because there are a number of other bases. The court has to... The IJ has to look at the totality of the circumstances. And there are a number of other bases that even if one... As Judge Bennett points out, even if one of the bases for implausibility can be explained away, there are three or four others that are not. Counsel, I think actually on this point the IJ did offer an explanation at ER 45, but on this particular one I found it not at all supportable. I mean, what he basically said was, why would they take so little? If this was really treason or sedition, it doesn't make a whole lot of sense. So I think there is an explanation, but I don't find it anything other than for that one instance speculation. But as you say, even if we get rid of that one, we'd have to do it for all of them in order to send it back. Correct. Correct. And so what the IJ is doing here, he's the trier of fact. He's in the live courtroom calling balls and strikes. And he observes the witness. He observes the demeanor. That's why the appellate courts have to give so much deference to adverse credibility findings, particularly as they relate to demeanor. What's the strongest of the grounds? You seem to, every time you're hit with one, you sort of say, but there are others. So what's the strongest one in your view? I think that the strongest one is his assertion that, and this kind of goes together, the whole claim doesn't make sense, but his assertion that the Chinese government knew that he was a dissident or believed him to be a dissident. They knew that he went to the United States, yet they didn't prevent him from leaving. They were interested enough in him to allegedly make him come and check with them once a week. He had to report to them once a week, like, you know, don't go out of town. Let us know where you are. What evidence is there in the record that the local police who took an interest in him, just in China, in this region of China, I don't even know what part of China this is in. But what evidence is there in the record to support the inference that if the local police took an interest in him, they would necessarily communicate that interest to whoever the people are at the airport, as you heard your opponent mention, so that they, too, would be on the same page? I just didn't see anything in the record that would support the IJ's, I would call it speculation, that there should have been this sort of seamless coordination between the local folks and whoever the folks are at the airport. So what do we have in the record that supports that? Well, I'm looking at it a little bit differently, and I don't mean to avoid it. I'm looking at his claim. We're evaluating the credibility of his claim as he makes it. He's claiming that if he comes back to China, he will be immediately arrested. That's what he says. So, you know, you take him at his word. By the local authorities, right? No, no, by the national authorities, because I think what his claim is. Who was he arrested by initially? I thought it was by the locals. Locals, right. Okay, so those are the only people, so far as we know, that have yet to take an interest in him, right? Right. Okay, so I assume his fear is if he comes back, those folks, again, will take an interest in him. And if, again, a bribe isn't paid, they might well report his dissonant activities on to higher authorities. But that hasn't happened yet. So his most immediate fear, I assume, is of these local officials. And so I guess I'm just still wondering what supports the IJ's assumption that the right hand and the left hand are going to be talking to each other in such a way that his explanation of, hey, I was allowed to leave the country without incident, is completely implausible. I just don't find anything to support that. Well, the IJ is considering his claim. It's his claim he's saying that I'm in danger. And so what the IJ is doing, he's saying this is what you're claiming, it makes no sense to me, because if what you're saying is true, and it's not really speculation, I would say that this is more logical inference and using common sense. If what you're saying is true, that the Chinese government would view you as a dissident, torture you, detain you, you know, et cetera, then they wouldn't have made it so easy for you to leave. That doesn't make sense. Now, one could argue, you know, maybe the locals didn't know or maybe the national party didn't know. But that's not the task for the court. The court's task is to find out if there's substantial evidence viewing the circumstances as a whole to support the adverse credibility. I agree. And I guess as to this one, it seems to me what we're trying to gauge is if the petitioner is telling the truth about his interactions with the local authorities, right, is it totally implausible that he would have been able to go to the airport and travel outside the country with his own passport? Now, I don't know anything about how the Chinese government tries to crack down on dissidents. Again, what kind of coordination there is between local and maybe more national authorities. I have no idea about any of that. The IJ, I assume, doesn't either. So it seems the IJ is an expert in that. Well, one comment on there. IJ hears a lot of cases. There's a lot of Chinese cases. And, you know, the workload of IJs is just incredible, hundreds and hundreds and hundreds of cases. So, you know, there's case law that gives fact finders deference based on their specialty. And this is not Chevron deference or anything like that, but just some modicum of support. So that's all I was saying. So I didn't mean to interrupt, Your Honor. Yeah, okay. So, yeah, you know, it may be plausible, but it's equally, our position is that it's equally plausible, it's equally reasonable to conclude that his entire claim makes no sense as he presented it. And we would thus argue that substantial evidence supports the adverse credibility finding and ask the Court to affirm the Board's decision. Okay, very good. Thank you very much. Thank you for your argument. We'll give you a minute for rebuttal. We've got quite a few cases today. Quickly, Your Honor, thank you. Yes. And, Your Honor, just briefly, I think that the immigration judge's adverse credibility finding mostly was supported by speculation and conjecture. I didn't find that there were any specific coded reasons given to support any of these findings. It was mostly, well, I don't believe it, or it doesn't make any sense. I don't think those are legal reasonings to support an adverse credibility finding, especially given the liberty interest at stake, namely that we have a petitioner here who is seeking asylum claiming that he was persecuted by the Chinese government. Okay. Thank you, counsel. The case just argued is submitted.
judges: Watford, Rakoff, Bennett